UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WOLVERINE PROCTOR & SCHWARTZ, LLC,**   Chapter 7
Debtor                                   Case No. 06-10815-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Motion of Peter A. Crawford for Recusal of Judge Feeney from Hearing the Fee Application of Janet Bostwick Because of Connections with Her" (the "Recusal Motion"). Through his Recusal Motion, which he filed on October 28, 2008, Peter A. Crawford ("Mr. Crawford"), seeks recusal of the undersigned from consideration of the pending "Third Interim Application of Janet E. Bostwick, PC for Compensation and Reimbursement of Expenses as Co-Counsel to the Chapter 7 Trustee" (the "Application") because, on June 2, 2008, he learned, for the first time, that the undersigned and Janet Bostwick ("Attorney Bostwick") serve as co-chairs of a financial literacy program sponsored by the United States Bankruptcy Court for the District of Massachusetts and the Boston Bar Association (the "BBA"). At present, the undersigned and Attorney Bostwick serve as co-chairs of the Financial Literacy Committee of the BBA's Bankruptcy Section, overseeing an established Financial Literacy Program for young adults.

1

## II. PROCEDURAL AND FACTUAL BACKGROUND

Mr. Crawford is a creditor of the Debtor by virtue of its assumption of liabilities of Wolverine, Proctor & Schwartz, Inc. He was the Chief Operating Officer of that corporation from 1999 to 2002. He has asserted a claim against the Debtor's estate in excess of $3 million, arising out of an alleged obligation to pay him a bonus, a matter presently being litigated in the United States District Court for the District of Massachusetts after that court withdrew the reference. *See* Local Rule 201 of the United States District Court for the District of Massachusetts.

Mr. Crawford prefaces his Recusal Motion with the observation that on May 30, 2008 this Court, acting "with apparent haste," overruled an objection he filed relating to the payment of defense costs for the former managing member of the Debtor.[1] Mr.

---

[1] Both Mr. Crawford and the Chapter 7 Trustee filed objections to the "Joint Motion of Deepak S. Kulkarni and Mark A. Brown to Modify Automatic Stay to Permit Payment of Defense Costs to Former Directors and Officers," which was filed on May 2, 2008. Specifically, Kulkarni, the former Chairman and Managing Member of the Debtor, and Brown, the former President of the Debtor, sought modification of the automatic stay to permit Executive Risk Indemnity, Inc., an insurer, to advance and/or reimburse them for their defense costs under an insurance policy providing for $1 million coverage for liabilities of directors and officers, including those arising out of breach of fiduciary duty, with respect to an adversary proceeding commenced by the Trustee for monetary damages in excess of $500,000 pertaining to their alleged breaches of fiduciary duties to the Debtor, as well as preferential and fraudulent transfers.

The Trustee objected to the Joint Motion on the grounds that the policy was property of the Debtor's bankruptcy estate and that the Debtor, not the individual officers, was the intended beneficiary of the policy. Mr. Crawford objected because, in his view, the policy precluded coverage to Kulkarni because of the financial advantage he gained as outlined in the Trustee's adversary proceeding, because the policy and proceeds are property of the Debtor's bankruptcy estate, and because neither Kulkarni nor Brown demonstrated cause for relief from the automatic stay.

The Court scheduled a hearing on the Joint Motion for May 27, 2008. Prior to the

2

Crawford did not appeal the Court's order of May 30, 2008.

Mr. Crawford represented that he learned of this Court's "connection" with Attorney Bostwick in June of 2008, although he attached a press release describing the Financial Literacy Program, captioned "Media Advisory," issued by the BBA on March 27, 2006, to his Recusal Motion. The Media Advisory reveals that Chief Bankruptcy Judge Henry J. Boroff and Bankruptcy Judge Joel Rosenthal also participate in the program, which was modeled on the Credit Abuse Resistance Education program founded in 2002 by the U.S. Bankruptcy Court for the Western District of New York and the Bankruptcy Committee of the Monroe County Bar Association.

Mr. Crawford further represented that Attorney Bostwick's pending Application was the first presented since he learned of the Financial Literacy Program. He stated:

> The propriety of participation of U.S. Bankruptcy Judges, with the apparent official sanction of the Bankruptcy Court itself, in a program involving non-lawyers and matters more financial than legal is troubling, but not the real issue here. It is apparent that the involvement of Ms. Bostwick and Judge Feeney as co-chairpersons of what appears to be an ongoing program may cause the impartiality of Judge Feeney reasonably to be questioned. That is particularly the case in matters involving the payment of fees to Ms. Bostwick.

The attached press release indicates that the program is run with "volunteer

---

hearing, the Trustee and the former officers reached a settlement. At the hearing, the Court ordered the Trustee to file a motion to approve the stipulation and afforded Mr. Crawford the opportunity to object. Mr. Crawford objected to the stipulation between the Chapter 7 Trustee and the former officers whereby Kulkarni and Brown could obtain reimbursement of their defense costs up to $50,000 each in connection with the adversary proceeding. The Court overruled Mr. Crawford's objection on May 30, 2008, without a further hearing, finding that the stipulation was neither unfair nor unreasonable and was within the scope of the Trustee's business judgment.

3

bankruptcy lawyers," thus it may be assumed that Ms. Bostwick receives no direct compensation for her co-chairmanship of the program. Nevertheless, a concern may to exist in the public mind as to whether Ms. Bostwick might be rewarded for her participation in the program by Judge Feeney, or because of the relationship established between them through work on the program. There could be a reasonable concern that, at least in close cases, Judge Feeney might, even subconsciously, allow fees that might not be allowed for those without such a close connection.

Particularly troubling is that Ms. Bostwick, in her affidavit in support of her employment as co-counsel . . . failed to disclose, on April 14, 2006, just 18 days after the issuance of the attached press release, her connection with Judge Feeney. Nor is Mr. Crawford aware that either Judge Feeney or Ms. Bostwick, who had duties to do so, ever disclosed this connection to parties in interest. . . .[2]

### III. DISCUSSION

Mr. Crawford correctly references applicable statutes and rules, specifically, 28 U.S.C. § 455 and Fed. R. Bankr. P. 5004(b). Section 455 provides in relevant part the following:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>>
>> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the

---

[2] Mr. Crawford cited Collier on Bankruptcy, 11th ed. at ¶ 5004.01[3] in support of the requirement that a judge *sua sponte* act with respect to any disqualifying factor when it is discovered.

4

> matter, or the judge or such lawyer has been a material witness concerning it;
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>>
>> (ii) Is acting as a lawyer in the proceeding;
>>
>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>>
>> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.
>
> (c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.
> . . .

28 U.S.C. § 455. In sum, subsection (b) of § 455 lists specific circumstances when a federal judge must recuse himself, while subsection (a) is a catch-all standard, which "imposes a duty directly on the judge to evaluate his own conduct and pass on the disqualification issue." In re Austin, Nos. 85-40639, 90-4041, 1990 WL 10007488 at *1 (Bankr. S.D. Ga. Dec.

5

10, 1990)(citations omitted).

Rule 5004, in turn, provides the following:

(a) Disqualification of judge

A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case.

(b) Disqualification of judge from allowing compensation

A bankruptcy judge shall be disqualified from allowing compensation to a person who is a relative of the bankruptcy judge or with whom the judge is so connected as to render it improper for the judge to authorize such compensation.

Fed. R. Bankr. P. 5004.

Although Mr. Crawford grounds his Recusal Motion on a perceived "connection" between the undersigned and Attorney Bostwick resulting from their work together as co-chairs of the Financial Literacy Task Force,[3] a connection which he maintains would cause this Court to be partial to Attorney Bostwick, the Court rejects Mr. Crawford's assumption that her service on the Financial Literacy Committee with Ms. Bostwick, and numerous other volunteer lawyers and fellow judges, gives rise to a disqualifying connection and establishes reasonable grounds for doubting this Court's impartiality. In making his argument, Mr. Crawford overlooks Canon 4 of the Code of Conduct for United States

---

[3] The Task Force completed its work. The undersigned and Attorney Bostwick are now co-chairs of the Financial Literacy Committee of the Bankruptcy Section of the Boston Bar Association.

6

Judges, as well as well settled law that "'a judge's mere acquaintance with a party or witness is not sufficient to call into question that judges' impartiality.'" In re Cooke, 160 B.R. 701, 706 (Bankr. D. Conn. 1993)(citing U.S. v. Kehlbeck, 766 F.Supp. 707, 712 (S.D. Ind. 1990).

> Canon 4 of the Code of Conduct for United States Judges provides:
>
> A judge, subject to the proper performance of judicial duties, may engage in the following law-related activities, if in doing so the judge does not cast reasonable doubt on the capacity to decide impartially any issue that may come before the judge:
>
> A. A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.
>
> B. A judge may appear at a public hearing before, or otherwise consult with, an executive or legislative body or official on matters concerning the law, the legal system, and the administration of justice to the extent that it would generally be perceived that a judge's judicial experience provides special expertise in the area. A judge acting pro se may also appear before or consult with such officials or bodies in a matter involving the judge or the judge's interest.
>
> C. A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge may assist such an organization in planning fund-raising activities and may participate in the management and investment of funds, but should not personally participate in public fund-raising activities. A judge may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice. A judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority. A judge shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.
>
> D. A judge should not use to any substantial degree judicial chambers, resources, or staff to engage in activities permitted by this Canon.

*See* Canon 4, Code of Conduct for United States Judges available at http://www.uscourts.gov/guide/vol2/ch1.html. The Commentary to Canon 4 elaborates on what is permissible. It provides in pertinent part:

> As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that the judge's time permits, *the judge is encouraged to do so, either independently or through a bar association,* judicial conference, or other organization dedicated to the improvement of the law. . . .

Id. (emphasis supplied).

While Mr. Crawford may question the decision to teach high school students about "the consequences of excessive credit card debt" as well as about personal finance, budgeting, and purchasing and financing an automobile, *see* the BBA's Media Advisory, the BBA and numerous volunteer lawyers have donated valuable time to the public service of educating young people about financial matters and the consequences of bad financial decisions, including bankruptcy. Those activities fit squarely within the purview of Canon 4. Accordingly, this Court unequivocally rejects the assumption inherent in the Recusal Motion that serving as co-chair of the Financial Literacy Committee with Attorney Bostwick is a "connection" within the meaning of Fed. R. Bankr. P. 5004 or warrants disqualification within the meaning of 28 U.S.C. § 455(a).

As noted by the court in In re Healy, No. 04-28375, 2006 WL 3751617 (Bankr. E.D. Cal. Dec. 18, 2006),

> Cases applying recusal statutes apply a presumption of impartiality. *E.g.* In re Larson, 43 F.3d 410, 414 (8th Cir. 1994) (judge presumed impartial; parties

8

seeking recusal bear "substantial burden" of proving otherwise); First Interstate Bank v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir.2000) ("Judicial impartiality is presumed"); In re Spirtos, 298 B.R. 425, 431 (Bankr. C.D.Cal. 2003) ("A judge is presumed to be qualified to hear a matter and the burden is upon the moving party to prove otherwise").

Healy, 2006 WL at *3. The court in Healy also observed:

> ... "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly ... because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping." In re Betts, 143 B.R. 1016, 1020 (Bankr. N.D. Ill. 1992), quoting In re National Union Fire Ins. Co., 839 F.2d 1226, 1229 (7th Cir. 1988) (omitting citation); see also In re Computer Dynamics, Inc., 253 B.R. 693, 698 (E.D. Va. 2000) (judge equally obligated not to remove himself when there is no necessity and to do so when there is), aff'd 10 F. App'x 141 (4th Cir. 2001).

Id. See also In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989), cert. denied, ACW Airwall, Inc. v. United States District Court for the District of Puerto Rico, 495 U.S. 957 (1990)("[T]he disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining disqualification of a judge, thereby manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."). Finally, the Healy court determined that "recusal issues must be raised 'at the earliest possible time' after facts supporting a recusal request are discovered." Healy, 2006 WL 3751617 at *3. (citing First Interstate, 210 F.3d at 988 n. 8; Spirtos, 298 B.R. at 434; *but see* In re Cooke, 160 B.R. 701, 705 (Bankr. D. Conn.1993) (even untimely challenge to partiality should be addressed).

The Court finds that Mr. Crawford failed to sustain his burden of establishing this Court's impartiality based upon participation in the Financial Literacy Program with Attorney Bostwick. Although the undersigned and Attorney Bostwick co-chair a

9

Committee for the Bankruptcy Section of the BBA, numerous volunteer lawyers and all but one judge from the United States Bankruptcy Court for the District of Massachusetts volunteer their time to participate in the Financial Literacy Program. As the court noted in Healy,

> It is common knowledge, of course, that judges regularly appear on panels and at presentations for members of the bar, and that such events are regularly advertised in various publications that might be viewed by both the public and the bar. But it is not reasonable to conclude that the participation of a judge with members of the bar who appear before the judge's court would create a predisposition, or an appearance of a predisposition, to favor the members of the bar who participate over those who do not. The Debtor's assertion of an appearance of impropriety is undermined by Canon 4 of the Code of Conduct, which not only permits judges to participate in such activities, but encourages judges to do so. *See* Code of Conduct for U.S. Judges, Commentary to Canon 4 (2002) (participation encouraged so that judicial officers might contribute to the improvement of the law). By itself, then, the undersigned's participation in the educational program is not sufficient to create a reasonable question of the undersigned's impartiality.

Healy, 2006 WL 3751617 at *4.

The ultimate issue in this case is "whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man [person]." In re Sylver, 214 B.R. 422, 427 (B.A.P. 1st Cir. 1997)(citing, *inter alia*, United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977)). *See also* Simone v. Worcester Co. Inst. For Sav., 52 F.3d 309 at *6 (1st Cir. 1995); In re Medrano Diaz, 182 B.R. 654, 659 (Bankr. D.P.R. 1995); In re WHET, Inc., 33

10

B.R. 424, 428 (Bankr. D. Mass. 1983).

Two further matters warrant brief discussion, namely Mr. Crawford's request that the Recusal Motion be decided by a judge other than the undersigned who has not participated in the Financial Literacy Program, and his request for an evidentiary hearing. In view of Mr. Crawford's failure to cite a case requiring this Court to assign the Recusal Motion to another judge for consideration, and the well-settled law that the challenged judge may determine a recusal motion, see In re Lieb, 112 B.R. 830, 837 (Bankr. W.D. Tex. 1990),[4] the Court denies Mr. Crawford's request to assign the Recusal Motion to another judge unaffiliated with the Financial Literacy Program. This conclusion is supported by the express language of 11 U.S.C. § 455(a)("Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").[5] The Court also denies Mr. Crawford's request for an evidentiary hearing. "A motion for disqualification does not confer upon . . . [movants] . . . a right to make a record in open court nor does it confer upon them a right to an evidentiary hearing." Lieb, 112 B.R. at 835.

---

[4] The court in Lieb stated: "Although courts have been known to seek the reassignment of a matter to another judge for purposes of resolving recusal motions, such action is by no means typical or required to insure a just ruling on such motions." 112 B.R. at 837 (citations omitted).

[5] Were the Court to grant Mr. Crawford's request, it would have the deleterious effect of manipulating the system. As noted above, all but one of the judges presently sitting in the United States Bankruptcy Court for the District of Massachusetts have participated in the Financial Literacy Program.

11

## IV. CONCLUSION

In view of the foregoing, this Court concludes that a reasonable person, were he or she to be apprised of the circumstances set forth herein, including the provisions of Canon 4, would harbor no doubt as to the Court's impartiality. Accordingly, the Court shall enter an order denying the Recusal Motion.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 31, 2008