UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WOLVERINE PROCTOR
& SCHWARTZ, LLC,**                                    Chapter 7
    Debtor                                              Case No. 06-10815-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are (1) the Trustee's Motion for Authority to Compromise Controversy (#1103) pursuant to which she seeks authority to compromise controversies with Deepak S. Kulkarni ("Kulkarni"), Mark Brown ("Brown"), Wolverine Proctor & Schwartz, Ltd. ("WPS UK"), Remedial Capital, LLC ("Remedial") (collectively, the "Defendants")[1] and Executive Risk Indemnity, Inc. (the "Insurer"); and (2) the Trustee's Motion to Approve Stipulation Regarding Settlement Payment and Second Amendment to Stipulation Regarding Motion for Payment of Defense Costs to Former Directors and Officers (#1104) (collectively, the "Compromise Motions"). Peter A. Crawford ("Crawford") filed Objections to the Motions. The Court heard the Motions and the Objections on December 15, 2009 and took the matters under advisement.

On May 20, 2010, this Court issued the following order with respect to the Compromise Motions and a "Request of Deepak S. Kulkarni for Determination of

---

[1] Foley & Lardner LLP was also named as a defendant. The Trustee, with Court approval, settled her claims against it.

1

Settlement Approval Motion Prior to Commencement of Trial of Tencara Adversary Proceeding on May 24, 2010" (#1150):

> Upon consideration of . . . [the Compromise Motions] . . .; and . . . the Trustee's Second Amended Complaint against Tencara, LLC (Adv. P. No. 07-1179), the Court denies Kulkarni's Request. In view of (1) the full and complete release of the Trustee's breach of fiduciary duty claims against Kulkarni; (2) the involvement of Kulkarni in the complex transactions which have given rise to the Trustee's Second Amended Complaint against Tencara; and (3) Kulkarni's assertion that it would be unfair to compel him to testify while the Compromise Motions remain under advisement, the Court concludes that the evidence elicited at the trial, in fact, may inform this Court's decision as to whether the Compromise Motions satisfy the standard set forth in Desmond v. Jeffrey, 70 F.3d 183, 185 (1st Cir. 1995), particularly as the Trustee has not quantified the amount attributed to her settlement of the breach of fiduciary duty claim against Kulkarni in her Compromise Motions.

The Court conducted a trial in the adversary proceeding commenced by the Trustee against Tencara, LLC ("Tencara") (Adv. P. No. 07-1179) and issued its Memorandum and Order denying the relief sought by the Trustee on January 21, 2011. For the reasons set forth below, the Court shall enter an order denying the Trustee's Compromise Motions.

## II. BACKGROUND

The Trustee filed an adversary proceeding against the Defendants and Foley & Lardner LLP on March 30, 2008 captioned: "Complaint to (I) Avoid and Recover Fraudulent Transfers, (II) Avoid and Recover Preferential Transfers, and (III) Recover Damages for Breach of Fiduciary Duty. In the preface of her Complaint, she stated, in pertinent part that she was seeking (i) to avoid and recover fraudulent transfers in excess of $509,980 made to WPS UK and benefitting Kulkarni, (ii) to recover damages in excess

2

of $509,980 from Kulkarni for breach of his fiduciary duties as managing member and an officer of the Debtor, (iii) to recover damages in excess of $509,980 from Brown, and (iv) to avoid and recover preferential transfers in the amount of $49,538.30 made to Remedial. The Defendants answered the Complaint and asserted a right to a jury trial. The Defendants denied liability and raised affirmative defenses. Specifically, Brown and Kulkarni asserted that they were entitled to indemnification and/or exculpation by the Debtor under the Debtor's governing documents and Delaware law.

On April 17, 2009, the United States District Court for the District of Massachusetts withdrew the reference of the adversary proceeding. On November 2, 2009, however, it entered an order confirming that this Court retained jurisdiction to consider a settlement of the adversary proceeding. Accordingly, the Compromise Motions now are before this Court.

In her Compromise Motions and her Complaint against the Defendants filed on March 30, 2008, the Trustee set forth a detailed description of the background germane to the compromise. Moreover, a comprehensive overview of the background relating to the Compromise Motions was established through the testimony of multiple witnesses and the introduction of evidence during the Tencara trial. The Court incorporates by reference its detailed findings of fact contained in its January 21, 2011 decision in Adv. P. No. 07-1179.[2]

---

[2] In particular, the Court incorporates its findings that Kulkarni was paid $270,480 in deferred compensation under his Consulting Agreement with Wolverine, Proctor & Schwartz, Inc. and that Remedial was paid $112,500 in connection with fees paid to CapitalSource Finance, LLP. immediately after the February 211, 2005 Transaction.

In addition to the facts adduced at the Tencara trial, the Court observes that in the Trustee's Complaint she alleged that Wolverine, Proctor & Schwartz, Inc. ("WPS, Inc.") commenced litigation against Aeroglide Corporation and, in January of 2006, the Debtor, which had acquired the assets and certain liabilities of WPS, Inc., settled the litigation and received a payment of $250,000, which it distributed as follows: $125,000 to Foley & Lardner LLP and $125,000 to Wolverine Proctor & Schwartz, Ltd., which according to the Trustee, became wholly owned by Phoenix UK, LLC after February 11, 2005.

Prior to the withdrawal of the reference on April 17, 2009, the Trustee settled with Foley & Lardner LLP.  As a result of the settlement, the estate received $75,000, and Foley & Lardner LLP reduced its proof of claim.

Prior to the commencement of its bankruptcy case, the Debtor had purchased a director and officers' liability insurance policy (the "Policy") from the Insurer.  The Policy provides insurance coverage against certain claims up to $1,000,000.  In May of 2008, Kulkarni and Brown filed a motion seeking payment of defense costs under the Policy. They asserted that the Policy and its proceeds were not property of the Debtor's estate and not subject to the automatic stay.  In the alternative, they sought relief from the automatic stay. The Trustee opposed the relief they requested.  Nevertheless, the parties entered into a stipulation, which the Court approved, providing that Kulkarni and Brown could seek payment of at least part of their defense costs from the Policy.

As noted above, in April of 2009, the United States District Court for the District of Massachusetts withdrew the reference.  The parties subsequently engaged in settlement

negotiations. The settlement, which the District Court confirmed is within this Court's jurisdiction, provides, *inter alia,* that the Settling Parties, namely the Defendants and the Insurer, will pay the estate the sum of $300,000 in full settlement of the Trustee's claims in exchange for mutual releases and the dismissal of the adversary proceeding.

### III. CRAWFORD'S OBJECTIONS

Crawford, who was Chief Operating Officer of WPS, Inc. from 1999 to 2002 and who has asserted a claim to a substantial bonus in the Debtor's case, filed Objections to the Trustee's Compromise Motions in which he set forth "a number of facts relating to WPS, Ltd. [Wolverine Proctor & Schwartz, Ltd.] and the Aeroglide settlement" going back to April of 2001. While not taking a position on "whether or not the *amount* of the settlement is fair and reasonable" in his Objection, Crawford rejects the Trustee's contention that she may not be able to collect a judgment against WPS UK [Wolverine Proctor & Schwartz, Ltd.]. He states that that entity "was simply used as a conduit to funnel cash to Mr. Kulkarni, [who] . . . is in all likelihood personally liable." Thus, he maintains that the Trustee's Motions should be denied because of the source of the settlement funds. Stated another way, Crawford complains that Kulkarni pocketed cash as a result of the transfers challenged by the Trustee, but, as a result of the settlement, he is not being compelled to contribute any of his personal funds to it.

### IV. DISCUSSION

In support of her proposed settlement and considering the standards for evaluating compromises in the First Circuit, *see, e.g.,* In re Healthco Int'l, Inc., 136 F.3d 45, 50 (1st Cir.

5

1998); Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995); Crawford v. Riley (In re Wolverine, Proctor & Schwartz, LLC), 2010 WL 1236298 (D. Mass. Mar. 12, 2010), the Trustee stated that, in her business judgment, the settlement referenced in the Compromise Motions is in the best interest of the estate and within the range of reasonableness for numerous reasons, including (1) that it results in a substantial recovery with respect to the Trustee's remaining claims totaling $494,000 (reduced as a result of the settlement with Foley & Lardner, LLP); (2) that it avoids the significant costs, expenses and time associated with continued complex litigation, a jury trial, the risk of an adverse decision; and (3) the potential difficulties in collecting a judgment even if she is successful.

The Court is not satisfied that the Trustee has sustained her burden as to the reasonableness of the proposed compromise under applicable law in this circuit based upon the evidence adduced at the trial in Adv. P. No. 07-1179.

> The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

Jeffrey v. Desmond, 70 F.3d at 185 (citing In re Anolik, 107 B.R. 426, 429 (D. Mass.1989)). "When considering the foregoing, deference should also be given to the Trustee's judgment regarding the settlement, provided that the trustee can demonstrate that the proposed compromise falls within a "'range of reasonableness.'" In re Fibercore, Inc., 391 B.R. 647, 655 (Bankr. D. Mass. 2008)(citing Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87 (B.A.P.

6

1st Cir. 1997); In re Whispering Pines Estates, Inc., 370 B.R. 452, 461 (B.A.P. 1st Cir. 2007); and In re 110 Beaver St. P'ship, 244 B.R. 185, 187 (Bankr. D. Mass.2000)).

Despite the deference accorded to the Trustee's business judgment, the Court concludes, based upon the facts adduced during the Tencara trial, that the Trustee failed to account for all sums paid to Kulkarni in the amount of $270,480 and the sums paid to Remedial in the amount of $112,500.  Although the Omnibus Agreement executed by the parties on February 11, 2005 referenced those sums, there was insufficient evidence as to whether the Debtor or WPS, Inc. actually paid those sums to Kulkarni and Remedial. Moreover, although the Trustee identifies the $180,000 transferred to Wolverine Proctor & Schwartz, Ltd., she did not seek to extract additional sums for any consequential damages occasioned by that payment at a time when the Debtor was experiencing cash flow problems, and she did not set forth the extent to which Kulkarni, personally, profited from the sale of the UK entity.  To the extent that Kulkarni benefitted from that transfer in an amount disproportionate to the actual dollars transferred due to his ownership of all the common units of and control over Phoenix UK, LLC, and the Debtor was harmed, the Compromise Motions should contain a more thorough examination of that transfer.  In short, the Trustee did not sufficiently address the direct and consequential damages flowing from Kulkarni's decision to satisfy his claims for compensation as a consultant to WPS, Inc., as well as his diversion of $180,000 to the UK operations at a time when the Debtor was strapped for cash.

Although the Trustee considered the probability of success and weighed the legal

7

and evidentiary obstacles and risks associated with complex theories and a jury trial, and the Court respects her experience and notes that her judgment is entitled to deference, the Court shall enter orders denying the Compromise Motions without prejudice to renewal based upon a more extensive analysis of the transfers delineated in the Court's decision dated January 21, 2011 and the consequential damages flowing to the Debtor as a result of those transfers. In conjunction with that anticipated analysis, the Court notes that the proposed settlement amount of $300,000 was to be paid by the Insurer under the Debtor's director and officer's policy, yet the consideration advanced by the Defendants is all but illusory. In particular, the Settlement in its present form appears to provide a unilateral release in favor of Kulkarni, although he has asserted no claims against the Debtor's bankruptcy estate.

## V. CONCLUSION

In view of the foregoing, the Court shall enter orders denying both of the Trustee's Compromise Motions.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 3, 2011