UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WOLVERINE PROCTOR & SCHWARTZ, LLC,**          Chapter 7
    Debtor                                    Case No. 06-10815-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM ON APPLICATIONS FOR COMPENSATION

### I.  INTRODUCTION

The matters before the Court for determination are: 1) the Trustee's Final Report; 2) the Fifth and Final Application of Lynne F. Riley, Chapter 7 Trustee, for Compensation and Reimbursement of Expenses; 3) the Sixth and Final Application of Riley Law Group LLC for Compensation and Reimbursement of Expenses as Co-counsel to the Chapter 7 Trustee; 4) the Sixth and Final Application of Janet E. Bostwick, PC for Compensation and Reimbursement of Expenses as Co-Counsel to the Chapter 7 Trustee; 5) the Sixth and Final Application for Fees and Expenses of Accountant for the Chapter 7 Trustee, Verdolino & Lowey, P.C.; 6) the Trustee's Supplement to Final Report and Applications for Compensation of Trustee's Professionals; and 7) the Objection of Peter A. Crawford ("Crawford") to the Trustee's Final Report and the Applications for Compensation.

The Court conducted a hearing of the Trustee's Final Report, the Applications and Crawford's Objection on April 12, 2012 and ordered the Trustee to file a Supplement to her

-1-

Final Report. The Court has reviewed the Applications and exhibits attached to the Applications, the Objection, and the entire record of proceedings in this Chapter 7 case, including the adversary proceedings commenced by the Chapter 7 Trustee, as well as certain proceedings involving Crawford which were the subject of litigation in the United States District Court for the District of Massachusetts.

Except for his recent purchase of a small claim for the sole purpose of obtaining standing to be heard in this case, Crawford does not hold an allowed claim in this case.[1] Notwithstanding his tenuous standing stemming from his recent purchase of a claim in the amount of $60.52, the Court permitted Crawford an opportunity to be heard on his Objection to the various Applications for compensation at the hearing held on April 12, 2012.

Crawford requested an evidentiary hearing on his Objection. The Court denies that request and shall rule on his Objection based upon the record of proceedings in this case, which this Court has handled since its inception. The Court finds that the material facts necessary to decide this contested matter are not in dispute and that an evidentiary hearing is unnecessary and unwarranted. Accordingly, the Court makes the following findings of fact and rulings of law.

## II. BACKGROUND AND FACTS

At the commencement of its Chapter 7 case on April 1, 2006, Wolverine Proctor & Schwartz, LLC (the "Debtor" or "Wolverine") filed Schedules of Assets and Liabilities

---

[1] Crawford filed two claims, numbered 82 and 72 in the Claims Register, both in the sum of $3,088,765.65 and both relating to an agreement with Wolverine, Proctor & Schwartz, Inc., a predecessor to the Debtor. As discussed below, after extensive litigation his claims were disallowed.

reflecting a single secured claim held by Tencara, LLC ("Tencara") in the approximate amount of $1.9 million and unsecured, nonpriority claims of approximately $4.65 million.

During the administration of the case, the Trustee generated gross receipts of $10,845,094.87 from sales of the Debtor's assets and proceeds from the collection of accounts receivables and various lawsuits. The Trustee objected to a number of claims, many of which were disallowed. The allowed unsecured claims that remain to be paid total $3,214,722.32. According to the Trustee's Final Report, general unsecured creditors will receive a dividend of approximately 23.50 percent of their claims if the Applications for Compensation are approved as filed.

The Trustee, her co-counsel, and her accountant, have each filed a Final Application for Compensation. All of the Applications contain detailed itemizations of the time spent and descriptions of the services rendered by the professionals in accordance with Fed. R. Bankr. P. 2014 and MLBR 2016-1. The applicants also have filed summary charts detailing the total time spent for each category of services performed.

The Trustee seeks a commission in the sum of $352,027.60, including expenses of $3,424.75, calculated according to the formula set forth in 11 U.S.C. § 326(a). The Trustee seeks final approval of compensation for services and expenses incurred by the Riley Law Group LLC in the sum of $1,205,196.22 for services that it and the firm's predecessor firms, Rile Esher LLP and Altman Riley Esher LLP (collectively, the "Riley firm"), rendered to the Trustee as counsel. Janet Bostwick, P.C. ("Attorney Bostwick") seeks approval of final compensation in the sum of $716,909.58, including expenses, as co-counsel to the Trustee.

Verdolino & Lowey, P.C. ("V&L") seeks an award of final compensation in the sum of $516,289.71, including expenses, as the Trustee's accountant. The amounts requested by the professionals employed by the Trustee include previous interim awards of fees and expenses, which are now subject to final review by this Court.

With respect to the Trustee's total commission in the sum of $348,602.85, she has been paid $91,978.88 as interim compensation. Accordingly, the Trustee seeks a remaining commission of $256,623.97. The Trustee calculated her commission in accordance with 11 U.S.C. § 326(a) based upon total actual and proposed disbursements in the sum of $10,845,095.87. The Trustee represents that she and her staff expended 1,762.5 hours in rendering services as Trustee in this case. Section 326(a) of the Bankruptcy Code provides that the Court may allow reasonable compensation under 11 U.S.C. § 330 for the Trustee's services in accordance with a formula based upon moneys disbursed or turned over by the Trustee to parties in interest, excluding the Debtor but including holders of secured claims. *See* 11 U.S.C. § 326(a).

V&L seeks total compensation in the sum of $516,289.71 for services ($482,210.00) and expenses ($32,079.71) as accountant to the Chapter 7 Trustee. V&L seeks a total of $162,159.00 in fees for services rendered in the Tencara Litigation, as defined below.

The Riley firm, firms in which the Trustee was or is a principal, were employed as co-counsel to the Trustee. As noted above, the Riley firm seeks total compensation in the sum of $1,205,196.22 for services ($1,200,250.38) and expenses ($4,945.84). The Riley firm rendered services to the Trustee in a number of different categories: Asset Analysis and Recovery;

Asset Sale and Disposition; Business Operations; Case Administration; Claims Administration and Objections; Employment Applications and Objections; Fee Applications and Objections; Financing; the WPS UK Litigation; the Crawford Litigation; Motions for Relief from Stay; the Tencara Litigation; Director and Officer Litigation; and Preference and Fraudulent Transfer Matters.  With respect to the Trustee's Complaint against Tencara, LLC (the "Tencara Litigation"), the Riley firm seeks total compensation of $410,212.03.  The Riley firm received approval of five interim awards for services and expenses in the sum of $1,039,206.72, including compensation in the sum of $349,210.53 for the Tencara Litigation.

Attorney Bostwick was employed as co-counsel to the Trustee effective April 4, 2006. Attorney Bostwick rendered services in fourteen different categories of work: Asset Analysis and Recovery; Asset Sale and Disposition; Business Operations; Case Administration; Claims Administration and Objections; Employment Applications and Objections; Fee Applications and Objections; Financing; the WPS UK Litigation; the Crawford Litigation; Motions for Relief from Stay; the Tencara Litigation; Director and Officer Litigation; and Preference and Fraudulent Transfer Matters. Attorney Bostwick seeks final approval of compensation in the total sum of $716,909.58 for services ($705,961.00) and expenses ($10,948.58).  She has received a total of $586,926.00 in fees and $10,434.80 in expenses pursuant to five orders entered by this Court approving interim applications for compensation. Attorney Bostwick seeks approval of compensation for legal services rendered to the Trustee in the sum of $119,035.00 for the period of July 1, 2010 to January 25, 2012. She seeks a total of $79,681.50 for the Tencara Litigation.  During the period of the Six and Final Application for

Compensation, Attorney Bostwick spent a total of 128.50 hours of time rendering services in the Tencara Litigation for which she seeks compensation in the amount of $44,975.00.

As noted above, Crawford filed an Objection to the Applications of the various professionals. Crawford makes a number of arguments in support of his Objection to the Trustee's professionals' Applications for Compensation. He maintains that fees for litigating objections to his claims - - claims filed in the Debtor's case which arose out of an agreement with a related company to the Debtor which were disallowed after extensive litigation in the United States District Court for the District of Massachusetts (the "Crawford Litigation") - - should be denied as the fees were out of proportion to the savings to the estate from the disallowance of his claim.  Additionally, Crawford makes the argument that the Trustee's original objection to his claim was unwarranted even though she was successful in obtaining disallowance of his claim after a mistrial and a jury verdict in the United States District Court for the District of Massachusetts, in addition to post-trial motions, and appeals.  Crawford also faults the Trustee for devoting insufficient resources to litigation with the former managing member of the Debtor, Deepak Kulkarni ("Kulkarni"), as well as with the Pension Benefit Guaranty Corporation, whose claims were the subject of settlements.  Crawford maintains that the fees sought by the professionals for the litigation with respect to the objection to his claim for a bonus as a former executive of a predecessor entity to the Debtor should also be substantially reduced, continuing to argue that his original claim is valid, that the Trustee's expert witnesses, including V&L, were unnecessary and gave inaccurate testimony, that evidence was misconstrued during the trials, that attorneys made unjustified

arguments, that the United States District Judge gave erroneous legal instructions to the jury, and that the United States Court of Appeals for the First Circuit erred in affirming the judgment disallowing Crawford's claim. Crawford also maintains that the Trustee's and her professionals' Applications for Compensation also should be substantially reduced on the ground that the Tencara Litigation fees were excessive, that the likelihood of success in that litigation was improbable, and that there was inefficient duplication of effort between the Trustee's attorneys.

On May 1, 2007, the Trustee commenced an action against Tencara, LLC, a limited liability company, which the Debtor listed on Schedule D- Creditors Holding Secured Claims as a secured creditor owed $1.9 million pursuant to a secured promissory note dated March 7, 2006. The Trustee sought to recharacterize its debt as equity and later amended her complaint to add an additional count for equitable subordination of Tencara's claim pursuant to 11 U.S.C. § 510(c). The Tencara Litigation was the subject of several dispositive motions, substantial discovery by both parties, a Memorandum and Order dated May 22, 2009 denying Tencara's Motion for Summary Judgment, a Memorandum and Order dated November 18, 2009 denying Tencara's Motion to Dismiss Count IV of the Trustee's Second Amended Complaint pursuant to which the Trustee sought to equitably subordinate Tencara's claim to the claims of other creditors, a seven day trial, and an 80-page Memorandum and Order dated January 21, 2011 through which the Court found in favor of Tencara and against the Trustee. After the trial, the Trustee and Tencara disputed the amount of interest and fees payable to Tencara pursuant to its loan documents. The Court

entered a Memorandum and Order dated May 4, 2011, directing the Trustee to pay Tencara the amount of $3,362,753.13, plus interest at the rate of $526.80 per day after March 1, 2011 as default interest, and Tencara's attorneys and expert's fees. The Trustee did not appeal the final order granting judgment to Tencara. The Trustee paid Tencara $2,829,965.00 on account of its secured claim on March 8, 2011 and an additional, stipulated amount of $1,026,237,79 on account of its attorney's and expert's fees for the litigation.

The Tencara Litigation was unsuccessful as the Court entered judgment in favor of the Defendant, Tencara. The litigation also cost the estate a substantial amount in contractual and default interest and fees payable to Tencara, and substantially diminished the return to unsecured creditors. After the conclusion of the litigation, the Trustee paid Tencara approximately $4,000,000 on account of its secured claim, an amount that is twice its secured claim as of the petition date of approximately $2,000,000. The fees requested by the Trustee, her co-counsel, and V&L for their participation in the Tencara Litigation total in excess of $650,000 and ultimately conferred no benefit to the estate.

### III. LEGAL PRINCIPLES

Section 330(a) of the Bankruptcy Code provides that the court may award to a trustee or a professional person employed under 11 U.S.C. § 327 reasonable compensation for all actual, necessary services and reimbursement for actual, necessary expenses incurred in performing such services.[2] The compensation payable to a Chapter 7 trustee is a commission

---

[2] Section 330(a) provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may

based upon a percentage of moneys disbursed in the case. *See* 11 U.S.C. §§ 326, 330(a)(3), (7).[3]

> award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

---

[3] Subsections 330(a)(3) and (a)(7) provide:

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Nonetheless, the amount of any award of compensation to a trustee must be reasonable based on the extent and value of the trustee's services. *See* In re Healy, 440 B.R. 834, 835-36 (Bankr. D. Idaho 2010); In re Coyote Ranch Contractors, LLC, 400 B.R. 84, 94-95 (Bankr. N.D. Tex. 2009). Accordingly, a trustee's request for compensation may be reduced or denied if the services expended were not in the interests of the estate. *See* In re Jaynes, No. 01-32645, 2010 WL 3123154 (Bankr. W.D. Wis. Aug. 3, 2010) (trustee was entitled to a lower commission than statute permitted to the extent the trustee's efforts were disproportionate to assets recovered); In re Owens, No. 05-70329-fra7, 2008 WL 4224530 (Bankr. D. Ore. Sept. 15, 2008)(trustee's sale of real estate generated a broker's commission and increased trustee's commission, while reducing amount payable to unsecured creditors). Thus, a trustee's commission under § 326(a) is not a per se entitlement to the total amount of the commission calculated using the statutory formula, and the court still must determine the reasonableness of the Chapter 7 trustee's commission, considering numerous factors relating to the work performed and value of services as well as consideration of the formula. *See* In re C & D Dock Works, Inc., 437 B.R. 443 (Bankr. M.D. Fla. 2010); In re Clemens, 349 B.R. 725 (Banrk. D. Utah 2006). *But see* In re Salgado-Nava, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012) ("absent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed

---

\*\*\*

> (7) In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

11 U.S.C. § 330(a)(3), (7).

reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances. Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review.").

As noted above, the court may award reasonable compensation for professional services and may reduce the amount of a professional's application for compensation if the court determines a proposed fee is unreasonable. *See* 11 U.S.C. § 330(a)(2). *See also* Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc.), 427 F. 3d 804 (10th Cir. 2005). Subsection (a)(3) of § 330 provides that, in determining the reasonableness of any compensation to be awarded, the court shall consider the extent and value of such services, taking into account all relevant factors including: the time spent; the rates charged; whether the services were necessary or beneficial at the time they were rendered; whether the services were performed within a reasonable time commensurate with the complexity of the problem; whether the professional has demonstrated skill and experience in the bankruptcy field; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases. *See* 11 U.S.C. § 330(a)(3). Moreover, pursuant to subsection 330(a)(4), the court must disallow compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate. *See* 11 U.S.C. § 330(a)(4)(A)(ii)(I). In analyzing fees under § 330 and determining their reasonableness,

courts have focused on the following four questions: 1) Were the services necessary or beneficial to the estate?; 2) Are the services adequately documented?; 3) Did the professional exercise proper billing judgment?; and 4) Are the fees reasonable taking into account the statutory factors?

In connection with the first question, the necessity of and beneficial nature of the services is a threshold inquiry. *See* Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enters., Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993). Where it becomes reasonably obvious that litigation will cost more than it likely will benefit the estate, counsel has a duty to abandon such litigation. *See* Matter of Taxman Clothing Co., 49 F. 3d 310, 315 (7th Cir. 1995) (court reduced compensation of attorney for Chapter 11 trustee because the attorney pursued lawsuits after it became reasonably obvious that further litigation would cost more than the recovery). In Taxman the court observed:

> This duty placed [counsel] under an obligation to his client, the debtor's estate, to abandon the preference suit once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate. We emphasize the words "reasonably obvious." The standard is an objective one: did a time come when a reasonable lawyer in [counsel's] position would have abandoned the suit? And it allows room for differences in judgment. When abandonment is not the obviously right course, when reasonable professionals could differ over the right course, the professional is not to be penalized, just as a trustee is not to be surcharged for a discretionary judgment that later proves to have been mistaken.

Matter of Taxman Clothing Co., 49 F.3d at 315 (citing Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977)).

After analyzing necessity and benefit, the court must then determine whether the amount sought is reasonable. Using a lodestar calculation, the court multiplies the hourly

rate by the reasonable number of hours and then adjusts the fee based on the statutory criteria. *See* Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012)("The section 330 factors mirror those encapsulated in the traditional lodestar approach to calculating attorneys' fees."). The court is not required to accept the number of hours itemized, and may reduce hours if a case is overworked. Id. at 69. The court instead may make an independent determination of the reasonableness of hours devoted to the case. *See* Pope v. Vu (In re Vu), 366 B.R. 511 (D. Md. 2007).

## IV. DISCUSSION

First, the Court approves the Trustee's request for a commission as it represents a reasonable amount of compensation based upon the formula set forth in § 326(a) and the factors set forth in 11 U.S.C. § 330(a)(1,), (3), and (4). A review of the itemized statement of services rendered by the Trustee and her staff in performing the duties of a trustee reflects that if the Trustee were billing for the services rendered the amount of charges would be approximately $523,900. The Court finds that Crawford's Objection to the various Applications of the Trustee and her professionals, including his contentions set forth in his Objection relating to the Trustee's objection to his claim, lacks merit with one exception which will be discussed below. As to the Crawford Litigation, the Trustee was successful in obtaining disallowance of Crawford's proofs of claim in the sum of $3,088,765.65 and a determination that Crawford had no claim against the estate. The Crawford Litigation was hotly contested, factually complicated, the subject of lengthy discovery, and the subject of dispositive motions. Moreover, the first trial resulted in a mistrial, occasioned by juror

misconduct and the case had to be retried, through no fault of the Trustee or her professionals. The litigation involved post-trial motions and baseless appeals to the First Circuit Court of Appeals, which assessed costs against Crawford, and to the Supreme Court of the United States. The Court agrees with the Trustee that Crawford's objection to the professionals' fee Applications is improperly motivated by his refusal to accept the final disallowance of his claim. The Court finds that the services rendered by the Trustee, her co-counsel and her accountant, in objecting to Crawford's improper claim were necessary and the fees they incurred in rendering these services were reasonable.

The Court sustains Crawford's Objection in one respect. The fees associated with the Tencara Litigation requested by the Trustee's co-counsel are excessive. The result obtained, namely judgment in favor of the Defendant, and the complete lack of any benefit to the estate resulting from the litigation warrant a substantial reduction of fees in this category. Indeed, due to the Tencara Litigation, the estate was harmed. The Court finds that both of the law firms employed by the Trustee as her co-counsel did not objectively and impartially evaluate the merits or the risk of loss to the estate in the Tencara Litigation before the trial. The attorneys did not adequately analyze the weaknesses of the Trustee's case against Tencara in light of the magnitude of its secured claim. Moreover, they did not appropriately factor the interests costs that the estate would be obligated to pay in the event the action against Tencara was unsuccessful in light of the default rate of interest set forth in the loan documents.

The Trustee and her co-counsel assert that they attributed their optimism about the

strengths of the Trustee's case to rulings made by this Court denying Tencara's motion to dismiss and allowing the Trustee's motion to amend her complaint to add a count for equitable subordination. This Court's rulings, however, were made on dispositive motions and amendments are liberally granted. The rulings were made in the pretrial phase of the adversary proceeding in accordance with well-settled legal standards for determination of such motions without regard to evidence. The Trustee and her co-counsel's arguments that because of her success in pretrial motions she and her attorneys correctly weighed the risks of the Tencara Litigation are belied by the evidence. The emphasis on the Court's failure to express any reservations or misgivings about the litigation represents a fundamental misunderstanding of the relative burdens with respect to motions to dismiss, *see* Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007),[4] motions for summary judgment, *see* Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, and the Court's role in deciding dispositive motions, particularly where the Trustee's Complaint involved a series of complex financial transactions and a personal friendship between the principal of Tencara and Kulkarni, the Trustee's witness whose testimony and credibility had the potential to either support or undermine the Trustee's claims for relief.[5]

---

[4] The Court denied Tencara's Motion to Dismiss, which was filed on June 22, 2007, approximately seven weeks after the commencement of the adversary proceeding, on July 25, 2007. It denied a Motion to Dismiss Count IV for equitable subordination under 11 U.S.C. § 510(c) set forth in the Trustee's Second Amended Complaint on November 18, 2009.

[5] Tencara filed a Motion for Summary Judgment on January 9, 2009. Due to numerous requests for continuances made by the Trustee to file a response to the motion,

Because the Tencara Litigation was unsuccessful, the estate was required to pay approximately $4,000,000 to Tencara, and it incurred legal fees to co-counsel to the Trustee. The result was harmful from the perspective of creditors of the estate. Notwithstanding the Court's determination, in light of the relationship of Tencara's managing member and the managing member of the Debtor and the circumstances of the Tencara loan, the Court cannot fault the Trustee and her professionals for investigating the validity of Tencara's secured claim, commencing the action, and conducting discovery. Although the Trustee and her counsel maintain that they attempted to resolve the adversary proceeding through settlement, in view of Tencara's steadfast refusal to do so, it should have become clear to the Trustee's co-counsel after the close of discovery, during the trial preparation phase of the case, including when the Trustee and her counsel were preparing the Joint Pretrial Memorandum required by the pretrial order, that they were unlikely to be able to succeed on any of the counts, particularly in the absence of compelling testimony from Kulkarni whom the Trustee relied upon as a key witness. Accordingly, the Court concludes that a reduction in compensation for co-counsel to the Trustee by fifty percent in the category of the Tencara Litigation is required in view of the results obtained. The Court, however, shall not reduce V&L's compensation for its services in the Tencara Litigation as an expert where its actions were directed by the Trustee and her co-counsel.

**V. CONCLUSION**

---

the Trustee did not file an Opposition until March 24, 2009. The Court denied the Motion for Summary Judgment on May 22, 2009 in an order in which it identified seven factual issues.

In accordance with the foregoing discussion, the Court shall enter the following final orders with respect to the Applications:

> The Court approves the Trustee's request for a commission in the sum of $348,602.85 and for reimbursement of the Trustee's expenses in the sum of $3,424.75.
>
> The Court approves the Sixth and Final Application of V&L and awards it total compensation of $484,210.00 in fees and $32,079.71 for reimbursement of expenses.
>
> The Court allows in part and denies in part the Sixth and Final Application of the Riley firm and awards the Riley firm the sum of $995,144.20 as final compensation for legal services and $4,945.84 for reimbursement of expenses.
>
> The Court allows in part and denies in part the Sixth and Final Application of Janet E. Bostwick, P.C. and awards Attorney Bostwick the sum of $666,120.25 as final compensation for legal services and the sum of $10,948.58 as reimbursement for expenses.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

September 10, 2012